UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Hugh Gilmore,

    Plaintiff,

                                                  **13-cv-1019 JRT/FLN**

v

City of Minneapolis and Police
Officers of the City of Minneapolis      DEMAND FOR JURY TRIAL
John Doe 1-5, in both their official
and individual capacities,

    Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff, JOHN HUGH GILMORE by and through his attorney, MARK R. MILLER, and for his Complaint, states as follows:

### JURISDICTION AND VENUE

1. This action presents various Constitutional, statutory, and common law claims arising under the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. Sections 1331 and 1343.

1

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

2. Pursuant to 42 U.S.C. Section 1983 and other applicable law, this Court is justified to award nominal, compensatory, and punitive damages against Defendants City of Minneapolis (nominal and compensatory only) as well as Officers John Doe 1-5 in their official as well as their individual capacities for the past violations of Plaintiffs' Constitutional rights and the harm caused by their individual and collective actions.

3. This Court is justified to award reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. Section 1988, et seq. and other applicable law.

4. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. Section 1391 because all individual Defendants, upon information and belief, reside within this District and the events or omissions giving rise to Plaintiff's claims occurred within this District.

## PLAINTIFF

5. Plaintiff is an attorney in good standing, duly licensed to practice in Minnesota, who resides in St. Paul, Minnesota and is a well known political activist, blogger and writer.

## DEFENDANTS

6. The City of Minneapolis is an incorporated municipality and Minnesota's largest city by population.

7. Defendants Officers John Doe 1-5 are, upon information and belief, employees of the City of Minneapolis Police Department who at all times relevant to the events herein were acting under the color of law and in accordance with a custom, policy or practice established within the police department for handling such events which form the various causes of action as set out more fully below in this Complaint. In addition, the individual officers John Doe 1-5 were acting under color of law in their individual capacities and are being sued in both their individual and official capacities. Upon learning through discovery the names of

Defendants John Doe 1-5, Plaintiff will amend this Complaint to identify each individual police officer by name.

## COMMON ALLEGATIONS

8. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

9. On the evening of June 16, 2011 Plaintiff was having dinner with two political friends and colleagues at The Newsroom on the corner of 10th & Nicollet in downtown Minneapolis.

10. Suddenly two uniformed Minneapolis police officers (John Doe 1 & 2) burst into the restaurant, causing an enormous disturbance to all diners as they made their way to the booth where Plaintiff was dining. They loudly demanded that Plaintiff step outside with them "for some questions" without in any manner whatsoever indicating either the nature of their questions or the basis upon which they could remove him from his dining booth.

11. Confused, when Plaintiff asked what the nature of their conduct toward him was based, the two officers physically manhandled him out of the booth and dragged him, one on each side, out of the restaurant onto the corner area outside. At this point Plaintiff indicated he was an attorney though was at a loss to understand the officers' conduct and was eager to answer any questions they had for him.

12. At this the officers spun Plaintiff around, and without any resistance on Plaintiff's part, handcuffed him and threw him into the back seat of a waiting squad car parked directly outside the restaurant on Nicollet Mall proper. Plaintiff remained there for approximately 30 minutes.

13. Subsequently, officers John Doe 1 & 2 informed Plaintiff that they were releasing him and asked if he would leave the downtown Minneapolis area. Plaintiff agreed and indicated he'd be returning home to St. Paul. The two officers stepped outside of their squad car to radio in their disposition of the matter.

14. Upon re-entering their squad car, one of the officers said "we're sorry Mr. Gilmore" but the Sergeant they had just spoken to instructed them to take Plaintiff to jail for booking on the charge of disorderly conduct as well as a charge given by the Sergeant, John Doe 3, "interference with lawful process." John Doe 3 had never at any time been present at the scene where these events took place.

15. At no time had Plaintiff engaged in disorderly conduct nor interfered with lawful process or the carrying out of any police activity whatsoever. At the time of his arrest Plaintiff was ordering vegetarian food while wearing Birkenstocks.

16. Plaintiff was eventually transferred to another vehicle that had been called specifically to transport him to Hennepin County jail in Minneapolis. While in the transport vehicle, Plaintiff saw one of the arresting officers take a sign Plaintiff had had with him in the restaurant. Plaintiff then saw the officer read the sign and rip it up, shoving the sign, which read "Courtesy of: www.MinnesotaConservatives.org" into a

round, green permanent trash container on the corner of Tenth & Nicollet Mall.

17. Plaintiff verbally objected to the two police officers (John Doe 4 & 5) who were in the front seat of the transport vehicle that his political signage was being deliberately destroyed by one of the officers who had effectuated his arrest. He was told by one of the transport officers that he could take the matter up with the appropriate person after he had been taken downtown for processing but neither officer denied that the destruction was taking place before their own eyes nor moved to stop it. At no time did the officer destroying Plaintiff's political signage have a warrant or probable cause to either seize or destroy Plaintiff's property.

18. Before having dinner with his colleagues that evening, Plaintiff had been at a political gathering, "Right Online," with other conservative activists further up Nicollet Mall. The star attraction of that gathering was the late Andrew Breitbart. Walking down the mall en route to dinner he asked three or four women he passed on the street their opinion of Ayaan

Hirsi Ali, the world's preeminent human rights activist on behalf of women in Muslim countries.

19. Very soon after this conversation began a flash mob started to form on the corner of 11th & Nicollet consisting of attendees at another political conference that was taking place in Minneapolis, "NetRoots Nation." Netroots Nation is a gathering of political activists whose convention location was not far from where the events described herein took place.

20. Plaintiff found himself not talking human rights and Ayaan Hirsi Ali's leadership, but suddenly surrounded by aggressive, yelling, abusive activists. He engaged on matters political for a short time but began to fear for his personal safety after he tried to leave the mob but was repeatedly prevented from doing so. A number of the mob physically came within inches of him in order to have him make physical contact, by which they could thus claim assault. Significantly, no such physical contact of any kind was ever made.

21. Eventually Plaintiff was able to escape from the threatening mob even though he was chased for a period of time down Nicollet Mall, putting him in further fear for his personal safety. He had neither harassed anyone, assaulted anyone nor threatened anyone. Because of the unlawful, unconstitutional arrest, however, a very different, damaging and politically driven narrative would subsequently be born.

22. Plaintiff joined his friends at dinner, expressing astonishment at what he had just personally experienced. Approximately five minutes later the Minneapolis police burst in with the conduct described in paragraphs 10 through 17 taking place. Officers John Does 1 & 2 never witnessed any of the prior events that had occurred on Nicollet Mall.

23. At Hennepin County jail Plaintiff was immediately processed for release. He was never searched, never put in jail clothing (apart from exchanging his Birkenstocks for jail flip-flops) and never confined to a classic jail cell. Instead, he was put inline for his mug shot and finger prints and an inventory taken of his personal possessions. Upon all of the paperwork and related items being completed, he was released on $50 bail

and freed before daybreak after being confined for approximately six to eight hours.

24. Upon information and belief, such baseless arrests and subsequent release form a custom, policy or practice on the part of the Minneapolis Police Department. Such incidents are addressed without any consideration of the constitutional rights of the individuals involved. Defendants John Doe 1-5, in their individual capacities, acted with malice, ill will and reckless and callous indifference to Plaintiff's constitutional rights in effectuating his arrest.

25. Plaintiff was never required to make a court appearance in this matter.

26. Nine months later, on or about March 7, 2012, the City of Minneapolis dropped all charges. Plaintiff was unable to inform Andrew Breitbart about the disposition of this matter because he had died March 1st.

27. Between the arrest and the dropping of all charges, Plaintiff suffered enormous negative publicity from which he suffers to this day.

Being politically motivated, the narrative this unlawful, unconstitutional arrest gave birth to was that Plaintiff was bigoted, intolerant and prejudiced toward Muslims, Muslim women in particular. Such a narrative is patently false and unfair, causing substantial damage to Plaintiff's reputation. The narrative is particularly damaging and unfair given that the discussion that night dealt with the mentioning of Ayaan Hirsi Ali, a counter-narrative fact almost nowhere covered in the media.

    28. The damage to Plaintiff is ongoing, because the internet is forever, and initial, incorrect stories remain available for others to disparage the Plaintiff. Recently, the foreign press repeated this untrue narrative further adding to Plaintiff's damages.

    29. But for the unconstitutional and unlawful arrest, Plaintiff would not have had to, and would not still, suffer the humiliation, ridicule, embarrassment and damage to his reputation that directly flow from it and for which he is entitled to substantial damages

## COUNT I

**Violation Of Constitutional Rights Under The First Amendment**

**(42 U.S.C. §1983)**

30. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

31. By reason of the aforementioned actions, policy, custom, or practice the City of Minneapolis and the police officers John Doe 1-5 acting in their official capacities, and acting under color of law, deprived Plaintiff of his clearly established Constitutional rights of freedom of expression under the First Amendment of the Constitution of the United States, and are therefore liable to plaintiff for all remedies provided under 42 U.S.C. §1983.

32. By reason of the aforementioned actions, the Defendant police officers John Doe 1-5, acting in their individual capacities, and acting under color of law, deprived Plaintiff of his clearly established Constitutional rights of freedom of expression under the First Amendment of the

Constitution of the United States, and are therefore liable to plaintiff for all remedies provided under 42 U.S.C. §1983.

## COUNT II

## Violation Of Constitutional Rights Under The Fourth Amendment

## (42 U.S.C. §1983)

33. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

34. By reason of the aforementioned actions, policy, custom, or practice the City of Minneapolis, and the police officers John Doe 1-5 acting in their official capacities, and acting under color of law, deprived Plaintiff of his clearly established Constitutional rights under the Fourth Amendment of the Constitution of the United States by subjecting him to unlawful and false arrest without probable cause, and further deprived Plaintiff of his clearly established Constitutional rights to be secure in his papers and effects under the Fourth Amendment of the Constitution of the United States, and are therefore liable to Plaintiff for all remedies provided under 42 U.S.C. §1983.

35. By reason of the aforementioned actions, the Defendant police officers John Doe 1-5, acting in their individual capacities, and acting under color of law, deprived Plaintiff of his clearly established Constitutional rights under the Fourth Amendment of the Constitution of the United States by subjecting him to unlawful and false arrest without probable cause, and further deprived Plaintiff of his clearly established Constitutional rights to be secure in his papers and effects under the Fourth Amendment of the Constitution of the United States, and are therefore liable to Plaintiff for all remedies provided under 42 U.S.C. §1983.

## COUNT III

**Violation Of Constitutional Rights Under The Fourteenth Amendment (42 U.S.C. §1983)**

36. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

37. By reason of the aforementioned actions, policy, custom, or practice the City of Minneapolis, and the police officers John Doe 1-5 acting in their official capacities, and acting under color of law, deprived Plaintiff

of his clearly established Constitutional rights under the Fourteenth Amendment of the Constitution of the United States by subjecting him to unlawful arrest without probable cause which deprived Plaintiff of his liberty without due process of law in violation of said Fourteenth Amendment, and are therefore liable to Plaintiff for all remedies provided under 42 U.S.C. §1983.

38. By reason of the aforementioned actions, the Defendant police officers John Doe 1-5, acting in their individual capacities, and acting under color of law, deprived Plaintiff of his clearly established Constitutional rights under the Fourteenth Amendment of the Constitution of the United States by subjecting him to unlawful arrest without probable cause which deprived Plaintiff of his liberty without due process of law in violation of said Fourteenth Amendment, and are therefore liable to Plaintiff for all remedies provided under 42 U.S.C. §1983.

## COUNT IV

## Unlawful Arrest Under Minnesota Law

39. Plaintiff re-alleges and incorporates by reference all prior paragraphs in this Complaint as though repeated herein.

40. By reason of the actions as described above, Defendants knowingly, falsely and unlawfully arrested and charged Plaintiff without probable cause under Minnesota law and are therefore liable to Plaintiff for all damages arising from said conduct.

## DEMAND FOR DAMAGES

WHEREFORE, Plaintiff demands judgment:

(1) awarding compensatory and punitive damages in the sum of ten million dollars against Defendants, jointly and/or severally, or as shall be determined by the trier of fact; and

(2) awarding reasonable attorney's fees pursuant to both 42 U.S.C. § § 1983 and1988, the costs of this action, and such other, further or different relief as the Court may deem just and proper.

**MARK R. MILLER, PLLC**

/s/ Mark R. Miller (#135380)
4910 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: 612-709-5602
Email: "Mark R. Miller" <mille399@tc.umn.edu>
Attorney for Plaintiff John Hugh Gilmore
Dated: May 22, 2013
