UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN HUGH GILMORE, | Civil No. 13-1019 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER REVERSING THE MAY 30, 2014 ORDER OF THE MAGISTRATE JUDGE** |
| CITY OF MINNEAPOLIS; and DEITAN DUBUC, JOSHUA STEWART, THOMAS RYAN, GREGORY KOSCH and MARK LANASA, *in their official and individual capacities as Police Officers of the City of Minneapolis*, | |
| Defendants. | |

Mark R. Miller, **MARK R. MILLER, PLLC**, 2885 Knox Avenue South, #406, Minneapolis, MN 55408, for plaintiff.

Sarah C. S. McLaren and Brian Scott Carter, Assistant City Attorneys, **OFFICE OF THE MINNEAPOLIS CITY ATTORNEY**, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, for defendants.

In this action Plaintiff John Hugh Gilmore brings claims under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights as well as a state law claim for unlawful arrest against the City of Minneapolis ("the City") and various police officers for the City (collectively, "Defendants"), arising out of Gilmore's arrest in downtown Minneapolis on June 16, 2011. Defendants object to the order of United States Magistrate Judge Franklin N. Noel granting Plaintiff's motion to compel Defendants to respond to certain interrogatories by identifying the laws and legal

authority supporting their defenses regarding the legality of Gilmore's arrest. The Court has carefully considered Defendants' timely objections. Because the Court finds that interrogatories which ask for relevant legal authorities in support of a parties' position impermissibly seek protected work product, the Court will sustain Defendants' objections and reverse the order of the Magistrate Judge.

## BACKGROUND

### I. GILMORE'S ALLEGATIONS

Gilmore's allegations in this case arise out of an incident that occurred in downtown Minneapolis on the evening of June 16, 2011. (Third Am. Compl. ¶ 9, Nov. 20, 2013, Docket No. 20.) Gilmore alleges that he was eating dinner with friends at a restaurant when two Minneapolis police officers approached him and asked if he would step outside with them to answer some questions. (*Id.* ¶ 10.) When Gilmore asked the officers what their purpose was, he alleges that they "physically manhandled him out of the booth and dragged him" outside. (*Id.* ¶ 11.) The officers then handcuffed Gilmore and placed him in the back of a squad car, where he sat for approximately thirty minutes. (*Id.* ¶ 12.) The officers then returned to the car and told Gilmore he was free to leave, but after communicating with police headquarters via radio told Gilmore that they were instead taking him to jail for "disorderly conduct" and "interference with lawful process." (*Id.* ¶¶ 13-14.) While being transported to jail, Gilmore saw an officer rip up and throw away a sign that Gilmore had with him at the restaurant. (*Id.* ¶ 16.) Gilmore was released from jail the next morning on $50 bail, and on March 7, 2012, the City of

Minneapolis dropped all charges against him.  (*Id.* ¶¶ 23, 26.)

In his third amended complaint, Gilmore alleges that prior to dinner that night he had been at a political gathering of "Right Online" with other conservative activists.  (*Id.* ¶ 18.)  When Gilmore was walking from the gathering to the restaurant he passed several women he believed to be Muslims, and asked them "their opinion of Ayaan Hirsi Ali, the world's preeminent human rights activist on behalf of women in Muslim countries."  (*Id.* ¶ 18.)  Gilmore alleges that shortly after that conversation began "a flash mob started to form" comprised of political activists with the organization Netroots Nation.  (*Id.* ¶ 19.)  Gilmore alleges that he was "suddenly surrounded by aggressive, yelling, abusive activists," and although "[h]e engaged on matters political for a short time," he "began to fear for his personal safety," and after several attempts was "able to escape from the threatening mob."  (*Id.* ¶¶ 20-21.)

## II. GILMORE'S DISCOVERY REQUESTS

In various documents filed in this matter since the filing of the third amended complaint, Defendants take the position that the two Minneapolis police officers that confronted Gilmore at the restaurant were dispatched based on reports that he was yelling, threatening, and making racial slurs at passersby.  (First Decl. of Brian S. Carter, Ex. B at 3, Jan. 22, 2014, Docket No. 26.)[1]  Defendants also contend that prior to the arrival of the two police officers, Gilmore was placed under a lawful citizen's arrest by a

---

[1] All page numbers refer to the CMECF pagination.

private person. (*Id.*, Ex. A.)  In their answer to the third amended complaint Defendants pled a number of defenses, including

> 2. Defendants allege affirmatively that they are entitled to statutory immunity under Minnesota Statutes Chapter 466, qualified immunity, and official immunity from any liability in this action.
>
> 3.  Defendants allege that they are immune from liability in this action under the provisions of Minn. Stat. § 46.03, subd. 5 in that Plaintiff's claim is a claim based upon an act or omission of an officer or employee, exercising due care, in the execution of a valid or invalid statute, charter, ordinance, resolution or rule.
>
> 4.  Defendants allege affirmatively that they are immune from liability in this action under the provisions of Minn. Stat. § 466.03, subd. 6 in that Plaintiff's claim is a claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.
>
> 5.  The acts upon which the Third Amended Complaint is made were privileged, were based upon probable cause to believe the Plaintiff committed a criminal offense, were commanded or authorized by law, and were done in a reasonable and lawful manner under the circumstances, such Defendant Officers are immune from liability in this action, and that therefore the City of Minneapolis, if it is vicariously liable for any such acts, is vicariously immune.

(Joint Answer to Third Am. Compl. at 8-9, Dec. 4, 2013, Docket No. 21.)

Gilmore served a number of interrogatories and requests for admission related to these defenses that are the subject of the present objections.  The two interrogatories at issue state:

> Interrogatory No. 6
> State in detail all facts which defendants claim support their "Separate Defenses," numbers 2 through 5 in their Answer, which assert that defendants have "immunity from liability" in this action.
>
> Interrogatory No. 9

> If Defendants deny any of Plaintiff's Requests for Admissions, explain in detail the reason or reasons for any such denial.

(Pl.'s Mem. in Supp. of Mot. to Compel at 2, Apr. 30, 2014, Docket No. 40.) The requests for admission referenced in Interrogatory 9 seek admissions regarding the lawfulness of Gilmore's arrest and the lawfulness of the officer's destruction of Gilmore's sign, stating:

> Request No. 2: Admit that the defendant arresting officer who destroyed plaintiff's sign . . . did not have a warrant or probable cause to seize and destroy the sign.
>
> Request No. 3: Admit that under Minnesota law the arresting defendant officers had no authority to arrest plaintiff for a misdemeanor offense when the alleged offense was not committed in the officers' presence.
>
> Request No. 4: Admit that under Minnesota law the arresting defendant officers did not have a warrant to arrest plaintiff . . . .
>
> Request No. 5: Admit that under Minnesota law the arresting defendant officers did not have probable cause to arrest plaintiff . . . .
>
> Request No. 6: Admit that plaintiff had a clearly established right under the First Amendment of the United States Constitution to carry the sign he had with him . . . .
>
> Request No. 7: Admit that [] a reasonable officer would understand that plaintiff's clearly established First Amendment rights were violated by the actions of defendants . . . .
>
> Request No. 8: Admit that plaintiff had a clearly established right under the Fourth Amendment of the United States Constitution not to have his papers and effects seized and destroyed without warrant or probable cause . . . .
>
> Request No. 9: Admit that plaintiff had a clearly established right under the Fourth Amendment of the United States Constitution not to be arrested without warrant or probable cause . . . .

>   Request No. 10: Admit that a reasonable officer would understand that plaintiff's clearly established Fourth Amendment rights were violated by the actions of defendants . . . .

(*See id.* at 2-3.)

Defendants provided the following responses to the interrogatories:

>   Interrogatory No. 6:
>   **SUPPLEMENTAL ANSWER:** Objection – calls for information protected by Attorney/Client Privilege and/or Work Product Doctrine. Subject to and without waiving these objections, Defendants state that their actions, as are discussed in the documents produced and interrogatory answers, were specifically permitted by law and did not violate any clearly established rights. Defendants did not act in a willful or malicious manner. Defendants' actions were privileged, were based upon probable cause to believe the Plaintiff committed a criminal offense, were commanded or authorized by law, and/or were done in a reasonable and lawful manner under the circumstances. Defendants are entitled to statutory immunity, including but not limited to immunity under the statutes identified in the Answer.
>
>   Interrogatory No. 9:
>   **SUPPLEMENTAL ANSWER:** With regard to the partial denial of Request No. 1, the defendant officers have knowledge of the events described in paragraph 22 of the Second Amended Complaint to the extent the events took place after the arrival of the defendant officers at the restaurant. With regard to the denial of Request No. 2, the alleged events did not occur and, even if they occurred, such events did not constitute a constitutional violation. With regard to the denial of Request Nos. 3, 5-10 the arresting officers had the legal authority to take all actions taken with respect to Plaintiff.

(Second Decl. of Mark R. Miller, Ex. A at 1-4 Apr. 30, 2014, Docket No. 41.)

### III. MOTION TO COMPEL

On April 16, 2014, counsel for Gilmore emailed Defendants and indicated that he believed the interrogatory responses were insufficient, and requested that Defendants "provide detailed answers on the 'law' and the 'legal authority' which defendants are

relying upon, as requested in Interrogatories nos. 6 and 9." (Second Decl. of Brian S. Carter, Ex. A at 3, May 7, 2014, Docket No. 52.) Defendants responded that they believed the information was work product, and therefore the supplemental interrogatory answers were not deficient. (*Id.*, Ex. A at 2.)

On April 30, 2014, Gilmore filed a motion to compel responses to the interrogatories at issue. (Mot. to Compel, Apr. 30, 2014, Docket No. 38.) In the motion, Gilmore argued that it was insufficient for Defendants to respond that their actions "were either 'permitted by law,' or were 'commanded or authorized by law,'" and that he was "entitled to know specifically **which law** and **which legal authority** the defendants are relying upon." (Pl.'s Mem. in Supp. of Mot. to Compel at 4 (emphasis in original).) Therefore, Gilmore requested that the Court require Defendants "to identify with specificity which laws and legal authority they are relying upon to support their defense that the arresting officers were justified and had probable cause to arrest plaintiff." (*Id.* at 8.)

The Magistrate Judge granted Gilmore's motion, finding that Gilmore's interrogatories were permissible contention interrogatories under Federal Rule of Civil Procedure 33. Specifically, the Magistrate Judge explained:

> The information sought by Plaintiff is relevant and must be produced. One of the central issues in this case is whether the arrest of Gilmore was lawful. At the hearing, Defendants stated that Gilmore's arrest was a lawful citizen's arrest, but that Defendants were under no obligation to specify the statutes or other legal authority supporting their position. This is not so. The information sought by Plaintiff through the relevant interrogatories and requests for admission represent classic contention interrogatories that are permissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(a)(2). Thus, to the extent Plaintiff moves to

compel additional information about Defendant[s'] position regarding the legality of Gilmore's arrest and subsequent destruction of Gilmore's sign – including relevant legal authorities – Plaintiff's motion is **GRANTED**.

(Order at 4-5, May 30, 2014, Docket No. 57.)

## ANALYSIS

### I.     STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). This Court will reverse such an order only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 554, 556 (D. Minn. 2008) (internal quotation marks omitted).

### II.    CONTENTION INTERROGATORIES

Defendants object to the Magistrate Judge's order to the extent it "requires the disclosure of legal citations determined to be relevant by defense counsel," arguing that this information is protected by the work product privilege. (Defs.' Objections at 1, 5, June 13, 2014, Docket No. 58.) Federal Rule of Civil Procedure 33 governs

interrogatories and provides, in relevant part that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Fed. R. Civ. P. 33(a)(2). Rule 26(b), in turn, provides that "[p]arties may obtain discovery regarding **any nonprivileged matter** that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Privileged matter includes work product materials, which are materials containing "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see also Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947).

The term "contention interrogatories," provided for in Rule 33, has not always been used consistently to refer to a single type of question. The court in *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985) explained that

> the phrase "contention interrogatory" is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends. Some people would define contention interrogatories as embracing only questions that ask another party whether it makes some specified contention. Interrogatories of this kind typically would begin with the phrase "Do you contend that. . . ." Another kind of question that some people put in the category "contention interrogatory" asks an opposing party to state all the facts on which it bases some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to how the law applies to facts. A variation on this theme involves interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention.

*Id.* at 332 (emphasis omitted).  With respect to these various categories of questions courts have generally held that contention interrogatories are proper even where they "probe[] a party's contentions as to how the law applies to the facts," explaining that "[s]uch probing is perfectly permissible and does not invade the work product privilege merely because the party's counsel must disclose the reasoning applying the law to the facts."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 4 (D.D.C. 2011); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 n.3 (D.D.C. 1987) (finding that interrogatories did not invade work product protection because "in answering contention interrogatories the party is only giving the factual specifics which the party contends supports a claim, and this in no way impinges on the attorney's impressions or analysis as to how the attorney will endeavor to apply the law to the facts"); *cf. In Home Health, Inc. v. Shalala*, Civ. No. 96-249, 1996 WL 557838, at *1 (D. Minn. July 3, 1996) (finding that requests for admission were permissible which sought "application of law to fact" because such requests "merely involve[] a request to confirm or deny if the requestor's interpretation of a law, regulation etc. concurs and is in agreement with that of the other party" (internal quotation marks omitted)).

      The Court concludes that the Magistrate Judge erred in requiring Defendants to "specify the statutes or other legal authority supporting their position" and produce "relevant legal authorities" in response to Gilmore's interrogatories because requiring a party to produce relevant legal authorities goes beyond the permissible scope of a contention interrogatory and constitutes protected work product.  Gilmore has not cited, and the Court has not found, a single case requiring a party to provide citations to all

relevant legal authority in response to contention interrogatories which ask for the basis of a party's claim.  Instead, courts have routinely concluded that interrogatories which seek purely legal information are not permissible.  *See, e.g.*, *Kendrick v. Sullivan*, 125 F.R.D. 1, 4 (D.D.C. 1989) (finding that interrogatories impermissibly sought pure legal conclusions where, in litigation challenging the constitutionality of the Adolescent Family Life Act ("AFLA") the interrogatories asked whether "if any AFLA grants are found to be unlawful, the entire statute must be stricken as unconstitutional" and asking whether the "AFLA can lawfully be administered if religious organizations are excluded as grantees").  For example, in *McCrink v. Peoples Benefit Life Insurance Co.*, Civ. No. 04-1068, 2004 WL 2743420 (E.D. Pa. Nov. 29, 2004), the court considered an interrogatory which requested "defendant to state with particularity the reasons that defendant relies upon 'in this litigation' for denying plaintiffs' claim." *Id.* at *4.  The court held that

> Defendant shall be required to answer this interrogatory to the extent that it seeks the factual basis for the denial of plaintiffs' claim.  However, defendant shall not be required to answer this interrogatory to the extent that it calls for the defendant's legal reasoning and theories for denying plaintiffs' claim, rather than for the factual basis underlying this reasoning.

*Id.* (citation omitted); *see also* Fed. R. Civ. P. 33, advisory committee's note ("As to requests for opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.  On the other hand, under the new language interrogatories may not extend to uses of 'pure law,' *i.e.*, legal issues unrelated to the facts of the case.").

Here, the Magistrate Judge essentially construed the at-issue interrogatories as asking for the disclosure of legal authorities relevant to Defendants' defenses that Gilmore's arrest and the subsequent destruction of his sign were lawful. But such an interrogatory does not fall within any of the categories of permissible contention interrogatories identified by courts. For example, the interrogatory does not ask whether Defendants are making a particular contention about the legality of the arrest and sign destruction; does not ask Defendants to state all of the facts or evidence on which they base their defenses; does not ask Defendants to take a position and then explain that position by analyzing how the law applies to the facts; nor does the interrogatory ask for Defendants to explain the legal theory behind a specific contention. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 332 (noting that one category of contention interrogatories includes "interrogatories that ask parties to spell out the legal basis for, or theory behind, some specified contention"). Instead, the interrogatories impermissibly reach into the territory of protected work product by seeking discovery of all the legal authorities upon which Defendants intend to rely to support their defenses. Such interrogatories do not serve the purposes of discovery. Discovery is intended to make trial "less a game of blind man's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683 (1958), but by narrowing and clarifying the issues, it is "hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary," *Hickman*, 329 U.S. at 516 (Jackson, J., concurring). Thus, to the extent the Magistrate Judge ordered Defendants to respond to the at-issue

interrogatories with citations to all relevant legal authorities, the Court will sustain Defendants' objections and reverse the order of the Magistrate Judge.

Finally, to the extent relevant legal authorities could be produced in response to an interrogatory, the interrogatories at issue here did not seek such information, and thus the Court concludes that the Magistrate Judge erred in expanding the scope of Gilmore's interrogatories at the motion to compel stage. The interrogatories at issue ask Defendants to "[s]tate in detail all facts" supporting Defendants' defenses and to "explain in detail the reason or reasons" for denial of any of the requests for admission. (Pl.'s Mem. in Supp. of Mot. to Compel at 2.) Interrogatory 6 plainly does not require the disclosure of legal authorities as it asks Defendants only to "[s]tate in detail **all facts**" which support their defenses. (*Id.* (emphasis added).) Furthermore, Interrogatory 9 asks only for an explanation of the reasons for Defendants' denial of the requests for admission, and does not request citations to legal authorities. Although in his motion to compel Gilmore sought an order requiring Defendants "to identify with specificity which laws and legal authority they are relying upon to support their defense that the arresting officers were justified and had probable cause to arrest plaintiff" (*id.* at 8), this relief was not warranted based on the plain language of the interrogatories Gilmore served upon Defendants, which did not require identification of such information. Accordingly, the Court will sustain Defendants' objections and reverse the order of the Magistrate Judge.[2]

---

[2] The only relief sought in Gilmore's motion to compel was "an order requiring defendants to identify with specificity which laws and legal authority they are relying upon to support their defenses that the arresting officers were justified and had probable cause to arrest plaintiff" (Pl.'s Mem. in Supp. of Mot. to Compel at 8), and that was the only issue related to the

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS** Defendants' Objections [Docket No. 58] and **REVERSES** the Order of the Magistrate Judge dated May 30, 2014 [Docket No. 57]. According **IT IS HEREBY ORDERED** that Plaintiff's Motion for Discovery [Docket No. 38] is **DENIED**.

DATED: September 21, 2014              _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                      United States District Judge

---

motion to compel addressed by the Magistrate Judge (*see* Order at 4-5). Therefore, because the Court has concluded that the Magistrate Judge erred in requiring responses which cited laws and legal authority, it will also deny Gilmore's motion to compel.